5-23-0792. Appellant, if you're ready to proceed, please identify yourself for the record. You may do so. Good morning, others. Good morning, counsel. My name is Assistant Appellant Defender Chris Seeloff, and I am here on behalf of the Defendant Appellant, Mr. Taguchi Craig. As I noted in the briefs, because there are so many family members and people related to each other that all share a lot of the same names, for the most part, I will be using first names, which is not my ordinary practice, but it is necessary in this case, which speaks a little bit to something that I wanted to bring up with your honors. Over the past two years that I've spent working on this case, there's something that I keep coming back to over and over again, which is the idea of chaos, right? That when the scene broke out, when the shooting happened, it was chaos. Detective Fennessy himself said that when he responded, it was one of the most chaotic scenes he'd ever seen. There were several shooters, at least five, that there was evidence in support of, perhaps more, over 100 gunshots fired. At trial, several witnesses either couldn't remember statements they had made or were uncooperative with the state when asked about those questions. There were violated motions of the nominee that were agreed to beforehand. There were violations of the rules of evidence. I hear say there's a violation of, not a violation, but an improper jury instruction that should have been given that wasn't. All throughout this case, it's chaos, chaos, chaos. And so going through today in my argument, and as your honors are considering the case going forward, I would ask that you consider that from beginning to end, the chaos that has permeated this case and how that likely had an effect on the jury, as we noted through our ineffective assistance and our plain error arguments. So moving forward, I'd like to point out the state's concessions, which we appreciate. In their response brief on pages 19 through 21, they concede that the questioning of Precious Doris, Daphne Dalton, Diane Supregg, and Dante Pickens were all constituted on improper hearsay. That the state could have refreshed those witnesses' recollections, could have properly gone about, or potentially at least could have properly gone about trying to admit those hearsay statements but didn't. And while not necessarily a concession, I would like to point out that on pages 28 and 29 of the state's brief are the only times where they talk about cumulative error, and that really is in a very perfunctory way. There is no case law argument in support of their argument. There is nothing to the cumulative error argument except to say that there were no plain errors. And so if your honors do find two or more plain errors, either based on our plain error arguments or our ineffective assistance arguments, we would ask that you take note of the state's argument on page 28 and 29, or rather lack thereof when considering that. Moving to the jury instruction issue, this I feel is very clearly laid out in our brief, and I don't believe that the state's response is particularly on point. The plain errors are attributed to a defendant. The jury must first be instructed to consider whether he even made those statements before determining what weight to be put on those statements. The state cites the people versus Echols from the first district to say that unless the defendant denies making those statements, the jury doesn't have to be instructed whether he did make them. But Echols, as we noted in our brief, we believe is wrongly decided because it effectively reads out entire portions of the jury instruction, and it also relied on a special concurrence that would improperly require the defendant to relinquish his right to remain silent in order to avail himself of a jury instruction, effectively relinquish a constitutional right in order to protect a statutory right to a jury instruction. Regarding the motion in Limine, the state and I went back and forth in the briefs about this. We believe it's fairly clear that the, well, first I'd like to point out that the motion was agreed to. It was the state's motion, and the state wanted to bring in these statements from Mosley, his jailhouse snitch statements about statements he overheard DiGucci make in jail. The statements that were allowed in were the statements that DiGucci allegedly made directly to Mosley. But the other two sets of statements that were expressly prohibited and the state said, Your Honor, we're not going to bring it in at trial. Low and behold, at trial, as we can see on pages 397 to 400 in the Revit record, the state starts asking Mosley about these conversations. Now the state says, the prosecutor just misused the word overheard at trial. But it's pretty clear from not only the continued questions after the, let's say for the sake of argument it was the misuse of the word overheard, it's clear not only from the continued questions after that word overheard, but also Mosley's testimony about that statement. He is talking about the statements that were prohibited by the motion in limine. He was talking about conversations he overheard them having. He was talking about multiple people in a conversation that he overheard. For example, if somebody wanted to ask me about this oral argument today, they wouldn't say tell me about the discussion you overheard the judges have. They would say tell me about the discussion you had with the judges, right? So throughout these pages on 397 to 400, the state is asking about and Mosley is testifying about conversations that he overheard. And it's important to note, too, that those conversations that were overheard and were prohibited were yet again another alleged confession. So not only is it prohibited by the motion in limine, but it's also then not covered by that improper jury instruction. That the jury wasn't instructed to determine whether DiGucci even made those statements. Moving on to the hearsay arguments, Your Honors, to sort of round out the errors we raised in the brief. As we noted, the state has made concessions, several concessions about which statements were improper hearsay, and we appreciate that. I would like to point out that the state relies on People v. Evans to make this argument that defense counsel made some sort of street smart decision to not object to obvious hearsay that the state even now admits was hearsay because, well, if defense counsel had objected, then all of a sudden, you know, these statements had to come from somewhere. So then by objecting, defense counsel would fall into the state's trap of bringing the evidence in properly. That doesn't pass the Smith test, I don't think. It doesn't appear to hold any sort of water. You object to improper evidence, the reason being that it's improper. It is excluded because it has a tendency to overprove something or to prove it in the wrong way. We don't exclude proper evidence. If we do, it's in error. And beyond that, I would like to point out that the authority the state relies on, that People v. Evans case, it's nonbinding because it's from a different court. It's not on point because it discusses a constitutional confrontation clause issue, so the standard of review is much higher. And the state also cites an assent, which, as we noted in the brief, is decidedly not the law. But as just a final point, if your honors look to the majority in Evans, it actually does support our argument. The majority in that case, even with this higher constitutional standard of review, confrontation clause standard of review, sided with the defendant and found that not only was the evidence improper cuse, but that it proved beyond a reasonable doubt that it improperly affected the defendant's trial. Just finally, with my brief points here, with the closely balanced nature of this case, there was a, the state argues that there was a lot of evidence of guilt. Ms. DeVucci would simply amend that statement to lop off of guilt. There was a lot of evidence in this case. We don't deny it. But when you look at the mountain of evidence that was improperly admitted against DeVucci, all of this improper hearsay, testimony from a jailhouse snitch in violation of an agreed motion to eliminate, that was brought by the state itself, this improper jury instructions that when the jury was bombarded with all this improper hearsay evidence, they were instructed that they had to determine first whether DeVucci even made the statements. So if we discount all that evidence, then we're left with these potential three eyewitness identifications. But as we also noted in the brief, those are potentially dubious where Venterian Jordan was given an exchange of leniency. His gun charges were dropped in exchange for his testimony. Daphne Dalton is the decedent's aunt and also testified that she didn't know DeVucci before this. And Megan Thatch, coming sort of to the crux of the issue here, the jury deliberated for eight hours on this case. After the first three and a half hours, they said, we'd like to see her testimony. And they were told, you have all the evidence, consider it as you will. But that's right there is evidence that Megan Thatch's testimony wasn't enough. And then after another three hours, they got said, we're still deadlocked on murder. We don't know how we can go forward. And so they were read the print instruction. And the print instruction is evidence that the evidence is still closely balanced. In fact, even more so, the jury has to be told, hey, you've got to try and come to a decision here. So this wasn't closely balanced the way the state likes to make it out to be. And the fact that all of these errors likely contributed to that incredibly long deliberation process suggests that the jury more likely than not broke its deadlock based on some improper factor. And so for all those reasons, we would ask that Your Honors find that either any single plain error or ineffective assistance resulted in the need for a new trial, or the cumulative effect of any of two or more of these errors resulted in an unfair trial and requires a remand for a new trial. No questions. Thank you, gentlemen. Can we please identify yourself for the record? Good morning, Your Honors. May it please the Court, Counsel, my name is Justin Nicolosi. I represent the State of Illinois in this matter. The State submits that this Court should approve, affirm the defendant's convictions below. I would certainly agree with Counsel's opening remarks that there was chaos in this case. But the State would submit that the incident here was chaos. The fact of the matter is, while I'm going to – the State made certain omissions in their brief, of course, in this case. I would also make another omission that the prosecutor in this case didn't do a great job regarding certain – the handling of certain matters. I'm going to kind of get right out in front of that. But the fact of the matter is, what the prosecutor did do is admit strong evidence of the defendant's guilt. In this case, we have three eyewitnesses who testified that the defendant was the person who shot and killed Keyshawn Thatch. Don Terry of Jordan said, quote, or said that the defendant shot the victim, quote, lots of times. Daphne Dalton testified that the defendant shot Keyshawn Thatch and Daphne froze at that moment and was just staring. Megan Thatch testified that the defendant stood over Keyshawn and fired four times. She also testified she didn't see anybody else shooting Keyshawn Thatch. Your Honor, that alone is very strong testimony. But there's more. Sharmika Brown saw the defendant shooting. James Mosley's testimony, of course, was that he talked to the defendant in jail. Defendant said that he shot at the legion. Calvin Thatch told police the defendant shot Keyshawn. He later retracted a trial, said that he just heard that information. But again, what kind of credibility does that witness have? Dynasty Craig and Dante Pickens testified that they lied when they earlier told police that the defendant shot Keyshawn Thatch. We have lots of people in this case that testified that they saw Keyshawn Thatch killed by the defendant. And for that reason, when we're talking about the chaos of the case, the evidence, and the chaos of the incident itself, we have to focus on the evidence that was presented at trial. That evidence was not, the strong evidence was not chaotic. It was straightforward. It was direct. It was credible. There was lots of evidence that the defendant was the person who killed Keyshawn Thatch. For those reasons, the issues, the errors that were committed were not clean error. They do not amount to ineffective assistance of counsel. Going to the jury instruction issue, I cited in my brief Echols and Ramos and more, and Echols cites even more cases where this exact same situation happened. Those courts found that it was not error for the bracketed portion questioning whether the defendant made the statements was omitted. It was omitted in all those cases. The court found, the courts are very consistent, first district, second district cases, that no error is committed when the bracketed section isn't included and the defendant presented no evidence that he denied making that statement. There was no evidence in this case, just like in Echols and Ramos and more, this court should find that that was not error to omit the bracketed statement. Regarding the pretrial ruling regarding Mosley and then fast forwarding to his testimony, yes, the prosecutor should not have used the word overheard multiple times. That was expressly prohibited. I would submit that that was a mistake because, again, the prosecutor was representing the state before trial. The prosecutor knew what was and was not prohibited. So shouldn't have used that. However, there's other evidence that the testimony given by James Mosley was referring to that first conversation. The prosecutor brought up the February 10th request form that James Mosley had filled out and submitted in the jail to talk to Detective Fennessy in the first place. That was the first of those requests regarding the Davucci-Craig case. So the state would submit that's evidence that we were talking about the first conversation. And even more importantly, as I point out in my brief, I think multiple times, what is there that James Mosley provided that was prohibited? All I mentioned was that the defendant had shot and that it was at the legion. There was nothing about the prohibited of the other shooting and the issue regarding shooting the house in another shooting that was discussed in conversations two or three. That was never before the jury. That would be extremely improper. But there's just there's defendant does not identify any single specific item from Mosley's testimony that came from a prohibited conversation. Nothing substantive was provided by Mosley's conversation. The jury didn't hear anything that was not permitted based on the first, based on that pretrial hearing regarding Mosley's testimony. There's simply nothing prejudicial regarding Mosley's testimony. And the defendant cannot point to anything that is overly harmful to him based on that testimony. Regarding the improper hearsay, again, as counsel mentioned, the prosecutor did not properly refresh the recollections of multiple witnesses in this case. But as I point out in my brief for specifically Daphne Dalton and Dynasty Craig, while the prosecutor's improper examination occurred on redirect, during direct, the prosecutor actually did properly discuss the issues that were later improperly discussed. Regarding Daphne Dalton, during direct, the prosecutor asked, did you see who she, who shot Keyshawn? And Daphne Dalton said, yeah. And then later said Dabuchi. That was completely proper. Later was improper. But again, where's the prejudice in that particular instance? Regarding Dynasty Craig, the prosecutor properly questioned her on direct about her lies about the defendant having, who was her brother, having killed Keyshawn. And then later on in redirect highlighted those same lies, the fact that Dynasty was lying by improper means. But again, where's the harm here? On direct, we already established that Dynasty Craig lied. So we already know it. Where's the prejudice? And that's I think the theme throughout my whole brief. Where is the prejudice here? There were some errors committed, but when you consider them independently or collectively, there was simply nothing that outweighed the strong evidence of guilt that there is in this case. I think my brief speaks for itself. With that, the State would ask this Court to affirm the defendant's conviction. If there are any questions, I'd be happy to answer them at this time. Your Honor, just briefly, I have just two or three points. The first being, I started directly to respond to the State's argument of look at all the strong evidence we have. And then the first thing they point to is all of these witnesses who lied on the stand and said they lied on the stand. Or pardon me, didn't lie on the stand, but couldn't remember on the stand or recanted on the stand and then admitted that they were liars and that they told all these fabricated stories. I don't know what the State's point with that is, except to say that the prosecutor who they admit did a very poor job here and admitted a lot of improper evidence somehow got their own witnesses to change their stories and say they can't remember a lot of different things. As to the witnesses, as we noted in the reply brief and as I discussed in my main time earlier today, Dontarian Jordan was given gun charges dropped in exchange for his testimony and we say the case law has said that that creates a credibility issue. Daphne Dalton said that she did not know Davucci Craig before the shooting and she was also Kishon's aunt. And Megan Thatch, as we pointed out, we can't deny that she testified that she saw Davucci shooting, but we also don't think that the State can deny, and in fact they didn't even address in their response brief or in their time today, that the jury sent out a note saying they wanted to see more information on her and that was after three and a half hours of deliberation. And then after another three hours of deliberation they said we're still deadlocked. So Megan Thatch isn't this nail in the coffin like the State makes it out to be. And the other two eyewitnesses we have identified their credibility issues. As for the motion in limine argument, the State raised it in their brief and we raised it in their reply. We countered in their reply. They raised it again today so I'm going to counter it again today. This idea that because the State argued the motion in limine, it knew it was prohibited, and of course it's not going to violate the motion in limine, that is anathema to the purpose that we're all here for today. This is a court of appeals that is there to, is here to determine errors at trial. Prosecutors are people, people are human, humans commit errors. Even if they argued the motion in limine, it was the motion in limine that they brought, it was agreed to, they broke it. Now the State argues on the motion in limine point that this was just about that February 10th first conversation and Mosley didn't discuss anything that was ruled pre-trial to be improper and was excluded. But we would push back on that diligently and to further the point, all three conversations that Mosley had, the latter two of which were prohibited by agreement before trial, all three of those conversations discussed Davucci allegedly making some sort of confession to being at the Legion and shooting Keyshawn Thatch. So it's no argument to say, oh, he was just talking about that first conversation and the way we know it is that he was just talking about a confession. All three conversations were talking, involved some sort of confession. And two of those three were excluded. So when the State at trial is talking about conversations that you overheard and the answers are, I overheard other people, or I overheard them insinuating multiple people, other people talking about it, that to me screams violation of the motion in limine. And to the final point then, the State says, what's the prejudice here, right? We've got all this evidence, sure, the State did a really awful job and they admitted all this improper evidence, but they found him guilty, right? And that sort of jumps to the end and then tries to work backwards from there. Our argument is to take a look at everything from start to finish. The violation of the motion in limine that the State brought itself and agreed to be bound by. The improper use of all of the hearsay evidence, the ineffective assistance of counsel claims, the jury not being instructed about the statements DiGucci made and that they had to determine whether he even made them first. All of that followed the jury into the deliberation. And we know that it wasn't a quick and easy decision. This wasn't they only took 45 minutes because they wanted the free slice of pizza they got for lunch. It was three and a half hours before the first note came out and said, we want to see testimony of the eyewitness. And the jury said, everybody said, you have the evidence, you have, please keep continuing to deliberate. They did for another three hours. They came back again and said, we can't come to any decision, we're deadlocked on this murder charge. The judge gave them the print instruction, which as we know from the case law is more evidence being closely balanced. And then not until after their eighth hour of deliberation did they come back with a guilty verdict. So to come, for the State to come in and say, they were going to find him guilty anyways. I don't buy it. I don't think Your Honor should buy it either. And I think the record supports that this was a closely balanced case along with the State's concession of errors and all of our arguments in support of these errors. We argue that it requires either based on closely balanced nature of the evidence or its denial of the right to a fair trial. I don't have any questions, but I will say I appreciated both your oral arguments today. That helped me. I'll be honest, sometimes oral arguments are just kind of regurgitation of the briefs, as you all well know. But you all did, in my opinion, a very good job laying out the issues. And this was a chaotic case, no doubt about it. I find that uncanny, because I had in my mind that this was going to be a chaotic case. I wanted to say the same thing. I was a little surprised that Justice Moody said that, because I was appreciative of both of your arguments. Yes. Thank you very much. We will take this matter under consideration and issue a ruling in due course. Thank you. Now we will be in recess.